OPINION
{¶ 1} Appellant Roy Black ("father") appeals the August 1, 2005 Judgment Entry entered by the Stark County Court of Common Pleas, Juvenile Division, which terminated father's parental rights, responsibilities, privileges and obligations with respect to his minor children and granted permanent custody of the children to appellee the Stark County Department of Job and Family Services ("the department").
 STATEMENT OF THE CASE AND FACTS {¶ 2} On May 3, 2005, the department filed a Complaint in the Stark County Court of Common Pleas, Juvenile Division, alleging Angelina Black (D.O.B. 2/9/03) and Roy Black (D.O.B. 1/12/04) were abused, neglected and/or dependent children and seeking permanent custody of the children.[1] This matter had been dismissed and refiled on two previous occasions.
 {¶ 3} The Complaint was based upon incidents which occurred in December, 2004, when the department received a referral that then two year old Briana Chatman (D.O.B. 3/7/02), one of mother's other children, was found wandering alone on the street dressed only in a diaper. Mother admitted she had been sleeping when the child left the house. The child had been missing for at least one half hour before mother contacted the police. Officers found the child to be unclean in her appearance. The department case worker arrived at the residence of father and mother, and found the home to be in an unacceptable condition. Specifically, she observed dog feces matted onto the floor and carpets, no sheets on the beds, mattresses on the floor, and very little food in the home. When the department removed the children, they did not have coats, socks or shoes. Mother explained the items were in the vehicle which father had.
 {¶ 4} Via Shelter Care/Pre-Disposition Judgment Entry, the trial court placed the children in the emergency temporary custody of the department. The matter came on for evidentiary hearing on the Motion for Permanent Custody on July 13, 2005. The following evidence was adduced at the hearing.
 {¶ 5} Kelly Strickland, an intake assessment social worker with the department, testified father was residing in the home with mother at the time the children were initially removed from the home. Strickland described the home as unsanitary, and noted the children's basic needs were not being met. The department also had some indication the three youngest children were very delayed.
 {¶ 6} Elizabeth Parsons, the ongoing family service worker assigned to the case, testified the department had a substantial history with the family because of the ongoing concern the parents were unable to meet the basic and medical needs of the children. Like Strickland, Parsons testified to the poor conditions of the home.
 {¶ 7} With respect to father, Parsons stated she had observed his interactions with Angelina and Roy at supervised family visits. Parsons described father as engaging in very little contact with the children. She noted the extent of his interaction was yelling, "No", at the children as he sat in a chair. Father did not play with the children, feed them or change their diapers. According to Parsons, father made no attempts to engage the children at all. The case worker noted the children were afraid of father as he is extremely rough and often violent with them. Parsons added father is unable to read or write and, from an educational standpoint, is unable to follow instructions from a doctor. Despite his illiteracy, father has refused any help. Parsons further noted the children have extensive special needs which father does not understand and is not interested in understanding.
 {¶ 8} Vicki Mitchell, an ongoing family service worker with the department, who had been previously assigned to the case, testified she had implemented a case plan for father, but father failed to complete it. She referred father to an adult literacy class, but he refused to participate. Father also refused to participate in Goodwill parenting classes, and the department provided him with in-home services from the First Unit and Healthy Tomorrows. Although the case in which she was involved was ultimately closed with the children remaining in the home, Mitchell continued to have concerns regarding father's ability to parent.
 {¶ 9} The trial court proceeded to the best interest portion of the hearing. Elizabeth Parsons testified Angelina and Roy Black are Caucasian children. Parsons stated Angelina has been diagnosed with autism and mild mental retardation. The child also has hearing and speech delays as well as delays in her gross motor and fine motor skills. Angelina had been referred for physical, occupational, and speech therapy. Additionally, Angelina was receiving services through Eastgate from MRDD.
 {¶ 10} With respect to Roy, Parsons noted at eleven months old, the boy was unable to sit up on his own. Parsons stated Roy had extensive damage to his ears as a result of untreated ear infections. Roy also needs physical, occupational, and speech therapy, as well as MRDD services. Parsons testified the children were in foster placements, and making a lot of progress at this time. The department had a family interested in adopting the children. Parsons concluded due to father's own problems he is not able to meet the needs of Roy and Angelina.
 {¶ 11} Via Findings of Fact and Conclusions of Law filed August 1, 2005, the trial court found father's failure to assert himself as a parent, and protect and meet the very basic needs of the children made him unable to provide an adequate permanent home for the children, and Angelina and Roy could not and/or should not be placed with father at this time or in the foreseeable future. The trial court further found it was in Angelina's and Roy's best interest to place them in the permanent custody of the department. Via Judgment Entry filed August 1, 2005, the trial court terminated father's rights and responsibilities in regard to the children and granted permanent custody to the department.
 {¶ 12} It is from the August 1, 2005 Findings of Fact and Conclusions of Law, and the August 1, 2005 Judgment Entry father appeals, raising the following assignments of error:
 {¶ 13} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO SERVE APPELLANT WITH NOTICE OF THE PERMANENT CUSTODY HEARING.
 {¶ 14} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT GRANTING PERMANENT CUSTODY TO APPELLANT'S BROTHER.
 {¶ 15} "III. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERST OF THE MINOR CHILDREN WOULD BE SERVED BY GRANTING PERMANENT CUSTODY TO SCDJFS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 16} This appeal is expedited and is being considered pursuant to App. R. 11.2 (C).
 I {¶ 17} In his first assignment of error, father maintains the trial court erred in failing to serve him with notice of the permanent custody hearing. Father submits, as a result, he did not appear at the hearing, and thereby, jeopardized his rights.
 {¶ 18} R.C. 2151.414(A)(1) mandates the juvenile court must schedule a hearing, and provide notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code, to all parties to the action and to the child's guardian ad litem. Service may be made by delivering a copy to the person notified, by leaving a copy at the person's usual place of residence, or be sent by registered or certified mail. R.C. § 2151.29 Father is a proper party pursuant to Juv. R. 2(Y); therefore, was entitled to notice.
 {¶ 19} Juv. R. Rule 20 reads:
{¶ 20} "(A) Service: when required
 {¶ 21} "Written notices, requests for discovery, designation of record on appeal and written motions, other than those which are heard ex parte, and similar papers shall be served upon each of the parties.
 {¶ 22} "(B) Service: how made
 {¶ 23} "Whenever under these rules or by an order of the court service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service is ordered by the court upon the party. Service upon the attorney or upon the party shall be made in the manner provided in Civ. R. 5(B)."
 {¶ 24} A review of the record reveals, and father concedes, he was personally served at the initial shelter care hearing with a summons and a copy of the permanent custody complaint. The Complaint sets forth the dates of the pretrial, trial and subsequent review dates. Additionally, father was present at the June 1, 2005 pretrial hearing. The trial court's entry notes father's presence and reiterates the date of the permanent custody hearing on the entry. We find father was provided with appropriate notice of the permanent custody hearing.
 {¶ 25} Father's first assignment of error is overruled.
 II {¶ 26} In his second assignment of error, father contends the trial court abused its discretion in not granting permanent custody to his brother.[2]
 {¶ 27} R.C. § 2151.353 governs the original disposition of a child who has been adjudicated abused, neglected, or dependent. R.C. 2151.353(A)(3) permits the trial court to "[a]ward legal custody of the child to either parent or to any other person who,prior to the dispositional hearing, files a motion requesting legal custody of the child". (Emphasis added).
 {¶ 28} Because neither father nor his brother filed a motion requesting legal custody of the children prior to the dispositional hearing, the trial court was not required to consider father's brother as a placement option. Assuming, arguendo, father or father's brother had a proper motion before the trial court, we find the trial court did not abuse its discretion in not granting legal custody to father's brother.
 {¶ 29} Elizabeth Parsons, the ongoing family service worker assigned to the case, testified during the best interest portion of the hearing the intake department had investigated the home of father's brother. Although the home was appropriate in that it was safe, clean, and there was adequate food, the department made a decision to deny the home study based upon concerns about whether father's brother and his girlfriend could care for and meet the needs of the children. Parsons explained father's brother and his girlfriend both worked full time jobs with the girlfriend often working two or three jobs at a time. The children would have been with other family members, who were determined not to be appropriate, or in daycare almost 24 hours a day. Parsons further stated the department found the commitment from father's brother and his girlfriend was "extremely concerning." Tr. at 41. Parsons explained if the situation would change and if father's brother or his girlfriend would be willing to do all the therapies and different things the children needed, the department would look at the home. Based upon the foregoing, we find the trial court did not abuse its discretion in failing to award legal custody of the children to father's brother.
 {¶ 30} Father's second assignment of error is overruled.
 III {¶ 31} In his final assignment of error, father maintains the trial court's determination the best interest of the children would be served by granting permanent custody to the department was against the manifest weight and sufficiency of the evidence. Specifically, father submits the department failed to put forth good faith and diligent efforts to rehabilitate the family situation. Brief of appellant at 8. Father continues he was not provided proper goals in his case plan and did not receive any assistance from the department. Brief of Appellant at 9.
 {¶ 32} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction
(1978), 54 Ohio St.2d 279.
 {¶ 33} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C.2151.414(A)(1) requires the trial court to schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 34} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 35} The record reveals this matter had been dismissed and refiled on two previous occasions. The prior cases included case plans for father. The instant action did not include a case plan as the department had moved straight to a permanency disposition. Father had failed to complete the requirements of the prior case plans. Elizabeth Parsons testified Angelina and Roy have extensive developmental problems. Specifically Angelina has been diagnosed with autism and mild mental retardation. The girl has hearing and speech delays as well as delays in her gross and fine motor skills. Angelina requires physical, occupational, and speech therapy as well as services from MRDD. She also requires extensive one on one time with her immediate caregiver.
 {¶ 36} Parsons testified Roy was significantly delayed. When he entered the temporary custody of the department at eleven months old, the boy was unable to sit up on his own. Roy had extensive damage to his ears as the result of ongoing, untreated double ear infections. Parsons noted the boy's gross and fine motor skills were delayed. Roy needs physical, occupational, and speech therapy, as well as hearing assistance and MRDD services.
 {¶ 37} Parsons further noted the children are doing very well in therapy and making a lot of progress. The department maintains sibling visitation between Angelina and Roy. Parsons stated a potential adopted placement had been identified for the children, and the placement is willing to adopt both Angelina and Roy.
 {¶ 38} With respect to father, Parsons testified he was unable to supervise his children in any capacity, and did not have even basic parenting skills such as the ability to change a diaper. Parsons stated father did not understand the children's special needs and had no interest in learning how to appropriately attend to those needs. Parsons concluded the granting of permanent custody to the department would be in the children's best interest as father's own limitations and refusal to cooperate with services left him unable to meet any of the children's basic needs.
 {¶ 39} Based upon the foregoing, and the entire record in this matter, we find the trial court's determination it was in the best interest of the children to grant permanent custody to the department was not against the manifest weight of the evidence.
 {¶ 40} Father's third assignment of error is overruled.
 {¶ 41} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
Hoffman, J. Wise, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] Darlene Zurfley ("mother") is Angelina and Roy's mother. Mother's three other children were also subject to this Complaint, but are not subject to the instant appeal.
[2] We note, by statute, a trial court may only award permanent custody to an agency. However, R.C. 2151.412 (G) (2) permits a trial court to place the child in the legal custody of a suitable member of the child's extended family. We shall analyze this assignment of error as if father asserted the trial court abuse its discretion in not granting legal custody to his brother.